UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BURTON, | ) 1:08-CV-01567 AWI JMD HC |
| Petitioner, | ) FINDING AND RECOMMENDATION |
| | ) REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| DERRAL G. ADAMS, | ) |
| Respondent. | ) |

Anthony Burton ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1982 conviction in the Los Angeles County Superior Court. (Answer at 1). Petitioner is serving a sentence of twenty seven years to life for a conviction of first degree murder with a firearm and for shooting at an inhabited dwelling. (Answer Ex. B, Decision of Los Angeles Superior Court, at 1).

Petitioner does not challenge his conviction in this action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before on July 7, 2006. (*See* Pet. Ex. A, Transcript of Parole Hearing, at 1). Petitioner contends that the Board violated his constitutional rights when they denied him parole.

1  Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles
2  County Superior Court challenging the Board's denial of parole. (*See* Answer Ex. A). The Los
3  Angeles County Superior Court issued a reasoned decision rejecting Petitioner's claims on August
4  10, 2007. (*See* Answer Ex. B).

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal
and the California Supreme Court. (*See* Answer Exs. C, E). Those petitions were summarily denied
by the respective courts. (*See* Answer Exs. D, F).

On October 7, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in
the Central District of California. The petition was transferred to this Court on October 20, 2008.
(Court. Docs. 3, 4).

Respondent filed a response to the petition on April 1, 2009. Respondent admits that
Petitioner has exhausted his state remedies and does not allege that the instant petition is untimely.
(Answer at 2). Petitioner did not file a reply to Respondent's answer.

## **FACTUAL BACKGROUND**

The facts of the commitment offense were considered by the Board in determining whether
Petitioner was suitable for parole and are thus relevant to the Court's inquiry into whether the State
court's decision upholding the Board's decision was objectively unreasonable. *See* Cal. Code Regs.,
tit. 15, § 2402(c)(1). The Board incorporated into the record a summary of the offense which had
been taken from the Board Report, dated January 21, 1999, stating:

> On the evening of January 17, 1981, [Petitioner] and two cousins, Derrick and Ronald Washington, and Anthony Smeed, another individual, attended a party at a private residence in Pomona. From outside the restroom, Burton and others began yelling gang related sayings when people began exiting the house and then they fired a handgun at the house twice. [Petitioner] and his companions then left the party approximately 1:00 a.m. on January 18th. [¶]
> The victim, Fred Wright and Elizabeth Wilson left the party. While they were standing on the corner, several shots were fired from a nearby alley striking Wright in the head killing him and struck Wilson in the upper leg. Police later found in [Petitioner]'s possession a handgun that they believe was used in both shootings.

(Pet. Ex. A, at 10-11).

\\\
\\\

Petitioner disputed this version of events, admitting that he had been involved in an altercation at the party but contending that he did not come back and fire shots at the dwelling. (Id. at 15). Petitioner stated that the handgun found in Petitioner's possession was not the handgun used in the shootings. (Id. at 11). Petitioner further argued that he was not involved in any gang related activities. (Id. at 11-12).

## DISCUSSION

### I.   Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole. Petitioner initiated this action and the denial of parole occurred when Petitioner was incarcerated at Corcoran State Prison, which is located in Kings County. (Pet. at 2). As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

### II.   ADEPA Standard of Review

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders section 2254 the exclusive vehicle for

1  Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127
2  (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that §
3  2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment
4  even though he is challenging the denial of his parole).

5        Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner]
6  demonstrates that the State court decision denying relief was 'contrary to, or involved an
7  unreasonable application of, clearly established federal law, as determined by the Supreme Court of
8  the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. §
9  2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71. As a threshold matter, this Court must "first
10 decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the
11 United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is
12 "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of
13 [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting
14 *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is
15 the governing legal principle or principles set forth by the Supreme Court at the time the State court
16 renders its decision." *Id.*

17       Finally, this Court must consider whether the State court's decision was "contrary to, or
18 involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72,
19 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant
20 the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on
21 a question of law or if the State court decides a case differently than [the] Court has on a set of
22 materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.
23 "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State
24 court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
25 applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal
26 court may not issue the writ simply because the court concludes in its independent judgment that the
27 relevant State court decision applied clearly established federal law erroneously or incorrectly.
28 Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the

1  "unreasonable application" inquiry should ask whether the State court's application of clearly
2  established law was "objectively unreasonable." *Id.* at 409.  Although only Supreme Court law is
3  binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining
4  whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062,
5  1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

6        Petitioner bears the burden of establishing that the State court's decision is contrary to or
7  involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,
8  94 F.3d 1321, 1325 (9th Cir. 1996).  AEDPA requires that a federal habeas court give considerable
9  deference to State court's decisions. The State court's factual findings are presumed correct. 28
10 U.S.C. § 2254(e)(1).  Furthermore, a federal habeas court is bound by a State's interpretation of its
11 own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002),
12 *rehearing denied*, 537 U.S. 1149 (2003).

13       Thus, the initial step in applying AEDPA's standards is to "identify the state court decision
14 that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where
15 more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last
16 reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that
17 later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
18 ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that
19 federal review is not barred by a State procedural ruling, "the question of which state court decision
20 last 'explained' the reasons for judgement is therefore relevant only for purposes of determining
21 whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly
22 established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal
23 habeas court looks through ambiguous or unexplained State court decisions to the last reasoned
24 decision in order to determine whether that decision was contrary to or an unreasonable application
25 of clearly established federal law. *Id*.

26       Here, the Los Angeles County Superior Court, the California Court of Appeal, and the
27 California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. B, D, F).  As the
28 California Court of Appeal and California Supreme Court issued summary denials of Petitioner's

claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the Los Angeles County Superior Court.[1] *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claim

The dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254). Here, Petitioner raises seven grounds for relief, alleging that: (1) the Board failed to adequately and sufficiently consider all relevant facts, thereby violating his due process rights to a fair and impartial hearing; (2) the Board's reliance on his disciplinary infractions to deny him parole violates the Equal Protection Clause; (3) the Board's reliance on the psychological evaluation conducted by Dr. Kuberski violated Petitioner's right to a fair and impartial hearing; (4) the Board's recommendation that Petitioner participate in more self-help was erroneous ; (5) the Board and several other state agencies are parties to a conspiracy to undermine positive factors for suitability; (6) the transcript of the hearing and the psychological evaluations are "insufficient, inadequate and non-factual" and (7) California's regulations regarding parole suitability conflict with "the law of rehabilitation and petitioner's liberty interest."

#### *1.     Due Process Claims*

As noted above, Petitioner claims that his due process rights have been violated by the Board's decision.

##### *A.     Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127.

---

[1] In denying Petitioner's application for relief, the California Court of Appeal merely cited to *In re Dannenberg*, 34 Cal.4th 1061, 1071 (Cal. 2005) and *In re Rosenkrantz*, 29 Cal.4th 616, 667 (Cal. 2002) without explaining or addressing the reasons for denying the petition. (Answer Ex. D). As such a decision does not provide an adequate basis for the Court to determine if the appellate court unreasonably applied clearly established federal law, the Court looks through the appellate court's ambiguous decision to the last reasoned decision provided by the State courts.

1  The United States Constitution does not, by itself, create a protected liberty interest in a parole date.
2  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

3  Respondent argues that Petitioner does not have a liberty interest in parole despite
4  recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 3). The Ninth
5  Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a
6  State's statutory scheme for parole creates a presumption "that parole release will be granted when or
7  unless certain designated findings are made, and thereby give rise to a constitutional liberty
8  interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates
9  of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a
10 cognizable liberty interest in release on parole). California Penal Code section 3041 contains the
11 requisite mandatory language,[2] thus vesting California prisoners "whose sentence provide for the
12 possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release
13 date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."
14 *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914
15 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a
16 parole date.

17  A finding that a liberty interest exists does not end the Court's inquiry as the Due Process
18 Clause is not violated where the denial of a petitioner's liberty interests follows the State's
19 observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends
20 that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and

---

[2] The Ninth Circuit's line of cases finding a liberty interest existed from the mandatory language of the statute is derived from *Greenholtz*. The United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995) modified the mandatory language methodology for finding a protected liberty interest in the context of conditions of confinement and Respondent argues is the methodology that should be applied to the parole context. The Court notes that application of the *Sandin* methodology would lead to the same conclusion as the denial of parole would fall within an "atypical and significant hardship" in light of the fact that parole is the rule rather than the exception. *See In re Smith*, 114 Cal.App.4th 343, 351 (Cal. Ct. App. 2003) (stating, "[u]nder [California Penal Code] section 3041, subdivision (a), release on parole is the rule, rather than the exception"). More importantly, the Ninth Circuit has "since held that *Sandin*'s holding was limited to 'the separate but related question of when due process liberty interests are created by internal prison regulations.' [citation] Accordingly, we continue to apply the 'mandatory language' rule set forth in *Greenholtz* and *Allen* in order to determine whether [the state's] statutory scheme creates a liberty interest in early release into community custody." *Carver v. Lehman*, 558 F.3d 869, 873 n. 5 (9th Cir. 2009) (citing *McQuillion*, 306 F.3d at 902-03 and *Sass*, 461 F.3d at 1127 n. 3 in applying mandatory language rule to find no liberty interest for early release into community under Washington statute).

for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (Id. at 5-6). Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is at least entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that he was deprived of any of these procedural safeguards.

However, the Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has further held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. While Ninth Circuit authority is non-binding for AEDPA purposes, the Court finds the rationale espoused by the Ninth Circuit in *Irons*, *Sass*, and *Biggs* persuasive on this point; thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole.

\\\

\\\

The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

  **B.**  ***State Court Decision***

After reviewing the record, the Court does not find that the Los Angles County Superior Court unreasonably applied the "some evidence" standard. *See* 28 U.S.C. § 2254(d)(1). The Superior Court concluded that there was some evidence to support the Board's finding that Petitioner continued to pose a risk of danger to society and public safety. (Answer Ex. B at 1). The Superior Court's conclusion was based on an examination of the evidence as it related to four factors cited by the Board in its denial–specifically, the commitment offense, Petitioner's previous record or violence, Petitioner's disciplinary history while incarcerated, and the unfavorable psychological

report.[3]

The Court recognizes that the California Supreme Court has held that even where the commitment offense was particularly egregious, reliance on this immutable factor *may* violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). In *Lawrence*, the California Supreme Court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226. However, Petitioner's case is materially distinguishable from *Lawrence* as there were additional factors relied upon the Los Angeles County Superior Court to find that there was some evidence of current dangerousness. Thus, Petitioner's first contention, that the Board violated his due process rights as the denial was based upon his commitment offense, is erroneous.[4] In addition to the commitment offense, the Los Angeles County Superior Court examined the following factors: (1) Petitioner's previous history of assaultive behavior; (3) Petitioner's disciplinary record while incarcerated; and (4) the unfavorable psychological evaluation. (Answer Ex. B at 2-3). The Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *See Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Here, the evidence examined by the Los

---

[3]While the Superior Court's use of the some evidence test as applied to each factor is questionable, the Superior Court additionally found that "the record contains 'some evidence' to support the Board's finding that the Petitioner presents an unreasonable risk of danger to society and is unsuitable for parole." (Answer Ex. B at 1).

[4]Petitioner also contends that the Board's failure to review, in sufficient detail, his "Central Files denied him his due process rights to a Fair and Impartial hearing." (Pet. Attach. at 5(b)). As stated previously, the full panoply of due process protections are not afforded to a parole hearing. Petitioner has produced no evidence that the panel was biased nor has he cited any authority for the contention that failure to review the record in detail, as proposed by Petitioner, would result in a violation of his due process rights. Petitioner's additional contentions relating to the gang affiliation are irrelevant as the gang affiliation was not one of the reasons cited by the Board for the denial of parole. More importantly, the additional evidence discussed below is sufficient by itself to meet the "some evidence" standard.

Angeles County Superior Court is sufficient to meet the "some evidence" standard.

The unfavorable psychological evaluation, relied upon by the Superior Court and the Board, classified Petitioner as having an anti-social personality disorder and found that Petitioner possessed an average level of dangerousness.[5]  The evaluation also stated that Petitioner still possesses a defiant and angry attitude towards prison staff, evidencing a failure to have rehabilitated sufficiently. (Pet. Ex. A at 61).  The Los Angeles Superior Court also identified the numerous disciplinary infractions incurred by Petitioner as evidencing his current dangerousness, noting that Petitioner received the twenty-four serious infractions (CDC 115 violations).  (Answer Ex. B at 2).  The Board had noted that six of these infractions concerned violence and one (for mutual combat) occurred in 2000.  (Pet. Ex. A at 49).  While the last serious infraction occurred in 2002, four years prior to the 2006 hearing, the Board was concerned that Petitioner's gains were relatively recent and that more progress would be needed before the Board could conclude that Petitioner did not pose a threat to others. (Id. at 62). The Court notes that the relatively recent nature of Petitioner's gains must be viewed in light of Petitioner's long history of criminal misconduct and assaultive behavior.   As noted by both the Board and the Superior Court, Petitioner has a significant history of violence prior to the commitment offense.  (Answer Ex. B at 2; Pet. Ex. A at 60-61).  In the four years preceding the commitment offense, Petitioner was convicted of battery as a juvenile (Pet Ex. A at 18) and was arrested for separate incidents of stabbing and shooting at a dwelling (Pet. Ex. A at 20-21), demonstrating an escalating pattern of violence.[6]  Petitioner's unfavorable psychological evaluation when combined with his history of violence, his disciplinary record, and the relatively recent nature of his gains bears a strong nexus to current dangerousness.  These factors provide a permissible and sufficient basis for the Los Angeles Superior Court to have found that there was "some evidence"

---

[5]A discussion of Petitioner's  challenge to his original psychological evaluation conducted by Dr. Kuberski is contained in subsection three below.

[6]While the later two incidents did not result in convictions, California regulations permit consideration of "all relevant and reliable information." Cal. Code Regs., tit. 15, § 2402(b).

1  that Petitioner was currently dangerous.[7]  Thus, the Court finds that the Los Angeles Superior Court
2  did not unreasonable apply the "some evidence" standard and Petitioner is not entitled to habeas
3  relief on this ground.

### 2. *Equal Protection*

In his second ground for relief, Petitioner alleges that his equal protection rights have been violates by the Board's reliance on his disciplinary infractions. Petitioner contends that such action violate the Equal Protection Clause as inmates with fixed sentences are not denied parole based on disciplinary infractions that are five to twenty years old.

"The equal protection clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Mayner v. Callahan*, 873 F.2d 1300, 1301 (9th Cir. 1989) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). Where a petitioner fails to allege any facts establishing that the laws were applied unevenly in a systematic manner or that the Board drew any distinction among similarly situated prisoners, the petitioner fails to state an equal protection claim. *Caswell v. Calderon*, 363 F.3d 832, 837-838 (9th Cir. 2004)(affirming district court's finding that petitioner's equal protection claim was futile where petitioner failed to argue either that the parole board drew any distinctions among similarly situated prisoners, treated petitioner differently because of membership in a protected class, or unevenly applied the law in a systematic manner); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991) (petitioner must prove that similarly-situated prisoners have systematically received shorter sentences).

Here, the Court initially notes that the most recent disciplinary infractions relied upon by the Board occurred in 2002, only four years prior to Petitioner's parole hearing. (Pet. Ex. A. at 39). Thus, Petitioner's contention that "[n]o other inmates except for lifers are continuously denied parole for [rule violation reports] 5 to 20 years old" is inapplicable to Petitioner's situation as the Board

---

[7] As those factors cited by the Board are sufficient to the meet the "some evidence" test, the Court finds it unnecessary to address Petitioner's contention that the Board's reliance on the commitment offense was erroneous as the crime was not beyond the minimum necessary for a conviction on first degree murder. While the offense did not tend to demonstrate a more callous disregard for human suffering than other first degree murders, the Court notes that the crime meets several of the other factors specified by the Legislature to be considered in determining whether the crime was committed in an especially heinous, atrocious, or cruel manner, including the fact that multiple victims were attacked and the motive for the crime was trivial as the victims were not related to the previous altercation that motivated Petitioner's shooting. See Cal. Code Regs., tit. 15, §2402(1).

relied on a disciplinary infraction that was less than five years old to deny Petitioner parole. (Pet. at 5). Furthermore, the petition does not contain any allegations that the Board either drew distinctions among *similarly situated* prisoners, treated Petitioner differently based on membership in a protected class, or unevenly applied the law in a systematic manner. Petitioner cites no authority for the contention that indeterminate life prisoners are a protected class. While Petitioner contends that he is being treated differently that inmates with a determinate term sentence, Petitioner's contention fails to provide a ground for relief under the Equal Protect Clause as he is not similarly situated to inmates with determinate term sentences. *McQueary*, 924 F.2d at 835; *see also Rounds v. Fisher*. 316 Fed.Appx. 679, 680 (9th Cir. 2009) (citing *Gerber v. Hickman*, 291 F.3d 617, 623 (9th Cir.2002) (en banc) in stating, "district court properly dismissed [petitioner]'s equal protection claim because California has a legitimate penological interest that is furthered by distinguishing, for purposes of parole, between prisoners with determinate and indeterminate sentences").

### *3. Use of Psychological Evaluations*

Petitioner administratively challenged the use of his original psychological evaluation conducted by Dr. Kuberski. A subsequent evaluation was conducted as a result of Petitioner's administrative challenge. Petitioner now argues that the Board's reliance on the independent report by Dr. Terrini, was erroneous as Dr. Terrini referenced the previous evaluation. Dr. Terrini, like Dr. Kureski, concluded that Petitioner had an anti social disorder and posed an average risk of danger. (Pet. Ex. A at 47-48). The Court notes that Petitioner's concerns with the Kuberksi report were noted at the parole hearing. Thus, the Board had the opportunity to weigh the credibility of the psychological report in lieu of Petitioner's administrative challenge. The Board ultimately found the reports credible. As the "some evidence" standard does not permit the court to reweigh the evidence and the Board's opinion as to the significance of the evidence, the Court may not re-weigh the psychological evaluations. *See Hill*, 472 U.S. at 455 (finding that in determining whether the some evidence standard is met, the reviewing court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence).

\\\

\\\

### 4. *Self Help Recommendation*

Petitioner contends that the Board's recommendation that Petitioner participate in self-help and therapy programs violates his liberty interest as there are no further programs available to him at his current place of incarceration. As noted above, Petitioner's right to due process of the law is limited in the parole context to whether some evidence support the Board's determination. Petitioner has failed to cite any authority for the proposition that the Board's recommendation violated his constitutional rights, which is required for habeas corpus relief. *See* 28 U.S.C. § 2254(a) (stating that the "court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*") (emphasis added). Additionally, the Court notes that the Board did not rely on insufficient participation in self-help or therapy in determining Petitioner posed an unreasonable risk of danger to society. (Pet. Ex. A at 60-62). Even if the Board had relied on self help participation, there is sufficient evidence to meet the "some evidence" standard without this factor, thus rendering reliance on this factor irrelevant to whether Petitioner's constitutional rights were violated. Consequently, the Court finds that Petitioner's request for relief on this ground should be denied.

### 5. *Conspiracy Claim*

Petitioner contends that the Board, the District Attorney's Office, the California Correctional Peace Officer Association, the California Department of Correction and Rehabilitation have conspired to undermine the positive factors for parole suitability, as to increase the rates of parole denials and thereby deprive prisoners of their liberty interest. Petitioner's claim fails to state a ground upon which habeas corpus relief may be granted as Petitioner was not deprived of his liberty interest as there was sufficient evidence in the record to find Petitioner currently dangerous. Furthermore, the record of the hearing illustrates that the Board considered positive factors in favor of parole suitability, such as Petitioner's adequate parole plans and acquisition of a GED and a vocational skill (Pet. Ex. A at 37, 39-40), thus, rendering Petitioner's argument inapplicable to his situation. Lastly, Petitioner has failed to produce convincing evidence of a conspiracy to deprive him

of his constitutional rights.[8]  Consequently, the Court finds that Petitioner's request for relief on this ground should be denied.

### 6.     *Inadequate Transcript and Psychological Evaluation*

Petitioner "appeals" the transcript of the parole hearing and the psychological evaluations, contending they are insufficient, non-factual, and inadequate. (Pet. Attach.).  Petitioner claims that those documents misstate his criminal history and have misquoted names and occupations.  To the extent Petitioner is challenging the credibility of the psychological evaluations, as noted above, the Court will not re-weigh the evidence presented before the Board.  To the extent Petitioner is challenging misquoted names and occupations contained in those documents, a petition for writ of habeas corpus is not the proper method for pursuing this action as there is no authority supporting Petitioner's contention that such errors in the transcript and the evaluation violate his constitutional rights.

### 7.     *Criteria for Parole Suitability*

Petitioner contends in his last ground for relief, that the regulations regarding parole suitability are "unjust, discriminatory and in conflict and contradiction of the law of rehabilitation and petitioner's liberty interest." (Pet. Attach.).  Petitioner seems to be arguing that the failure to adhere to the rehabilitative goals of the regulations has rendered them unjust and discriminatory.  Such a contention fails to provide any basis for habeas corpus relief as Petitioner has not identified any authority that would support the contention that his constitutional rights have been violated.  Furthermore, Petitioner fails to cite to any authority which would support the contention that California regulations regarding parole on their face violate Petitioner's liberty interest.  As noted above, as applied to Petitioner the regulations have not deprived him of his liberty interest as there was sufficient evidence to support the denial of parole in his case.  Consequently, the Court finds that Petitioner cannot obtain relief on this ground.

\\\

\\\

---

[8] Even if Petitioner had produced sufficient evidence, the Court questions whether this is the appropriate avenue in which to pursue this claim.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    January 7, 2010              /s/ John M. Dixon**
                                             UNITED STATES MAGISTRATE JUDGE